YAZOO & MISSISSIPPI VALLEY RAILROAD CO. *v.* A. BLUM ET AL.

[59 South. 92.]

1. CARRIERS. *Carriage of freight. Liability of warehouseman. Termination of liability as carrier.*

A carrier in the absence of negligence on its part is not liable for freight destroyed by fire, if at the time of the fire its liability was that of a warehouseman and not that of a common carrier.

2. CARRIERS. *Carriage of freight. Termination of liability as carrier.*

Where a carrier agreed with the consignee thereof to deliver cotton to a compress company, the duty at once devolved upon it, in the absence of a contract to the contrary, of making delivery to the compress in the usual and ordinary way, by placing it in an accessible position and giving notice thereof to the compress company and until this was done, and a reasonable time for the compress company to unload the car had elapsed the carrier's liability as a common carrier continued.

3. CARRIERS. *Termination of liability as carrier.*

Where a carrier contracted with the consignee of cotton to deliver it in the usual way to a compress company but failed to do so and the cotton was burned, the carrier cannot avoid its liability as insurer by showing that it had either complied with a special contract with the compress company with reference to making deliveries or that the loss was caused by the negligence of the servants of the compress company. Since the compress company

was a mere agent of the consignee to receive the cotton and was not given any express and had no implied power to release the carrier from its common law liability as an insurer, and in the absence of any knowledge on the part of the consignees of such special contract between the carrier and the compress company, the consignees are not bound thereby.

APPEAL from the chancery court of Washington county. HON. E. N. THOMAS, Chancellor.

Suit by the Yazoo & Mississippi Valley Railroad Company against A. Blum et al. to enjoin the prosecution of actions at law filed by defendants. From a decree for defendants, complainants appeal.

Certain of the appellees had shipped cotton to Greenville, Mississippi, by way of the appellant railroad company, to Messrs. Blum & Goldstein and Stanley Henshaw, who had given instructions to the said railroad to deliver said cotton to the Gulf Compress Company, then being operated by a receiver. This cotton was destroyed by fire, before the cars containing same had been unloaded, and the owners thereof brought suit against the railroad company for the value of same. The railroad company enjoined, on the usual ground of multiplicity, and also claimed that it was not liable to any extent, for the reason that the cotton had been delivered to the compress company. Each of the defendants answered, and made their answers crossbills. There was a trial on the merits before the chancellor, who decreed that the bill was properly filed, but that the railroad company was liable for the loss.

*H. D. Minor,* for appellant.

It does not require citation of authority to establish the proposition that where A has directed the carrier to deliver all shipments consigned to him to B, the latter thereupon becomes, for all purposes of delivery, A himself, and any state of facts which would preclude B from denying that a delivery had been effected would

equally preclude A.  The principle has been applied in *Sweet* v. *Barney*, 23 N. Y. 355; *Fitzsimmons* v. *So. Ex. Co.*, 40 Ga. 330 and other cases.

The point we are after in this case is, that this suit must be considered and determined just as if the compress company were the cross-complainant, suing for the value of the lost cotton.

And, we submit, the compress could not recover, because, even if we concede that there was a failure by the carrier to perfect delivery, still there was no liability on the party of the carrier beyond that of the warehouseman, for the reason that its failure to perfect delivery was due to the fault of the compress.

It cannot correctly be claimed that under a contract such as was in force between the compress and the railroad company the compress as a consignee could prolong the carrier's extraordinary liability as insurer by its own idleness and neglect.

We have already pointed out that, beginning with December 18th, the compress was practically idle for several days, and until after the fire, so far as unloading cars was concerned.  Surely it cannot be a sound proposition that the carrier's extraordinary liability was in force all this time, and was available to the compress company as a consignee, when it was the latter's neglect and inaction that prevented a consummation of the delivery which the carrier had undertaken.

Without, therefore, abandoning in any respect our contention that delivery had been completed, we submit that the compress company, if it had itself been the consignee, would be precluded from asserting the liability here asserted by the appellee, and that the appellees themselves are equally precluded.  For, having made the compress company their agent, they are responsible for its neglect in the premises.

We assume the correct principle to be that where delivery is to be made in the ordinary way at the car-

rier's own warehouse, when this warehouse is so full that the shipment cannot be unloaded for sometime, the carrier's extraordinary liability does not determine until the shipment has actually been unloaded, for it cannot set up the congestion of its own warehouse as an excuse for nondelivery.

Equally true it is, we think, that where by agreement of the parties, delivery is to be made to the warehouse of the consignee, the latter cannot prolong the extraordinary liability of the carrier, by reason of the fact that his own warehouse, at which the delivery is to be made is so congested that delivery is impossible. And, as said above, we think the compress and its delivery facilities must be treated, for all purposes of this case, as those of the consignee.

Applying these principles, it appears from the testimony above quoted that the cars containing the cotton in question were moved down on to the compress track by a switching movement at 1:30 p. m. of December 20th. If the compress delivery track No. 1 had been vacant, or if twelve cars thereon had been by the compress company unloaded so that the carrier could have taken them out, those empty cars would, by that switching movement have been removed, and the cars containing the cotton in question would have been placed on the delivery track.

It also appears that the cars on track No. 1 had been there for twenty-four hours or more, and that only two hours was necessary for unloading.

In the light of all this, we submit to the court that the cars containing the cotton in question would have been on track No. 1 at 1:30 in the afternoon of December 20th and a complete delivery, in accordance with the agreement between the parties, thereby effected. That this was not done was due wholly to the negligence of the compress company, the consignee's agent, in allowing its premises to be congested, and thereby preventing the carrier from making delivery.

Under such circumstances, we insist that the extraor-dinary liability of the carrier was not extended beyond the time when it was ready and willing to make delivery of these cars to the compress, but was prevented from doing so by the negligence of the consignee's own agent, the compress company.

In support of this view, we invite attention to the language of the supreme court of Illinois, in the case of *I. C. R. R. Co.* v. *Carter,* 165 Ill. 570, 36 L. R. A. 530, where it is said:

": . . On the theory that it was the duty of the defendant to safely carry and deliver the goods at St. Paul, it was equally the duty of the consignor, who was also the consignee, to receive them upon their arrival. Thus it was said in *Tarbell* v. *Royal Exch. Shipping Co.,* 110 N. Y. 170: ''The duty of the consignee to receive and take the goods is as imperative as the duty of. the carrier to deliver. Both obligations are to be reasonably construed, having reference to the circumstances. The stringent liability of the carrier cannot be continued at the option, or to suit the convenience of the consignee. The consignee is bound to act promptly in taking the goods, and if he fails to do so, whatever other duty may rest upon the carrier in respect to the goods, his liability as insurer is by such failure terminated.'' *Redmond* v. *Liverpool N. Y. & P. S. B. Co.,* 46 N. Y. 578; *Hedges* v. *Hudson River R. R. Co.,* 49 N. Y. 223. . . ''

*Mayes & Longstreet,* for appellants.

We do not controvert the general proposition that ''until a carrier's liability is terminated by the performance of all duties as such in respect to the property intrusted to it for transportation, its right as warehouseman cannot begin.''

We do not question the general proposition that ''the undertaking of a common carrier include the obligation of a safe delivery to the consignee; and its responsibility

as a carrier continues until it has made an actual delivery, or done that which may be considered an equivalent to or substitute for such delivery."

Now the further general rule that in order to discharge itself from its extraordinary liability as insurer, it must deliver the car "in a safe and convenient place for unloading at the elevator, warehouse or other place designated by the contract, or required in the usual course of business;" and that "its liability as a carrier does not cease until it places the car at a safe and convenient place for unloading," etc.

We affirm that those general rules do not reach and control this case.

Assuming that the rule of liability applicable to this case was that of the warehouse company, then the decision of the court below was erroneous, and should be reversed for the reason that the burden devolved upon the compress company and on the owners of the cotton, to show that the fire originated through the negligence of the railroad company; and there is no such showing whatever in the record.

We admit the rule that even where the liability is that of warehouseman, the warehouseman must show the reason for the failure to deliver. But this showing is made by showing that the cotton was destroyed by fire. When this is shown the burden of proof shifts, and it then devolves upon the owner of the cotton to show that if fire originated by the negligence of the warehouseman, and on this point there is a complete failure in the evidence. *United Fruit Co.* v. *New York Co.*, 10 Am. & Eng. Ann. 437, *supra; Seals* v. *Edmondson,* 71 Ala. 509; *Cunningham* v. *Franklin,* 48 Ga. 531; *Cummings* v. *Wood,* 44 Ill. 416; *Willit* v. *Rich,* 142 Mass. 356; *Foote* v. *Stairs,* 2 Bobb. 326; *Maden* v. *Covert,* 45 N. Y. Sup. Ct. 245; *Texas, etc., R. R. Co.* v. *Capps,* 2 Wilson Civ. Cas. Ct. App., sec. 36.

For the foregoing reasons, we respectfully submit that

this case should be reversed, and that a decree should be rendered in favor of the appellant.

*Wynn & Wasson,* for appellees.

If there was an agreement between the railroad company and the compress company that cotton should be delivered to the compress company in the order of its arrival, and if Henshaw is to be affected by any such agreement, then the appellant violated that agreement, and is liable because it did not deliver the cotton in the order of its arrival.

Henshaw testifies, positively, that he never heard of the agreement between the appellant railroad company and the receiver, a copy of which is filed as exhibit "A" with the answer of the appellant to the cross-bill until this suit, as will be seen from the second question propounded him and the answer thereto.

The principle of law governing the questions of delivery of cotton in this case have been so clearly set forth in the brief of Mr. Campbell, counsel for appellee, John-son, and Walton Shields, counsel for appellees, Blum & Goldstein, that we do not deem it necessary to add anything thereto.

*Walton Shields,* for appellees.

The liability of the railroad company, as a common carrier still remained when the cotton was burned and being insurers at common law, they are liable to appellee. Their common law liability was not affected by the mere instructions to deliver the cotton consigned to appellee, the compress company, unless the cotton had been actually delivered at the compress company and a reasonable time thereafter had elapsed for unloading of the same. The cotton was never delivered at the compress company, nor did a reasonable time elapse for the unloading of the same after it was placed on the "lead."

The court can understand why Blum & Goldstein, should have instructed the railroad company to deliver

the cotton to the compress company, meaning at a place where it could in a reasonable time unload it into the compress company's warehouse to be stored, cared for, and compressed and covered with blanket insurance, and on the other hand can understand that Blum & Goldstein would never have given such instructions if they had understood that a delivery on a "lead," situated one hundred feet away, where the cotton was subject to risk of fire and damage by weather and not subject to blanket insurance as being the compress company's warehouse a delivery to the compress company.

Finally it seems to us that this is a clear case of a failure of a common carrier to discharge its duty to deliver cotton at the place where it should have delivered the same, and if not, it is still liable because no reasonable time for the unloading of the cotton had elapsed between the time the cotton was placed and the time it was burned.

*R. B. Campbell,* for appellees.

Speaking generally, a common carrier of goods is an insurer of their safe transportation and delivery. Its undertaking to transport includes the obligation to make safe delivery to the consignee, or in accordance with their directions; and its responsibility as carrier continues until a safe delivery, or what is tantamount to a delivery, is made. That proposition is so well established as to make it futile to cite authorities.

Ordinarily the carrier's responsibility, as carrier, continues until the goods are unloaded from its cars, and deposited in a safe place in readiness for the consignees. In some jurisdictions, when that is done, a delivery is affected so far as to relieve the carrier from its responsibility as carrier. But the weight of authority is, to the effect, that unloading the goods, and placing them in a safe place in readiness for the consignees is not enough; but that its responsibility as carrier continues until the consignees have been notified that the goods

have arrived and are ready for delivery, and a reasonable time has elapsed for them to take the goods. That is the rule in Mississippi. *Gulf & Ship Island R. R. Co.* v. *Horton,* 84 Miss. 490.

Where goods are transported in carload lots, or bulk, the duty of unloading may, by contract or custom, devolve upon the consignees; but the responsibility of the carrier, as such, continues until the cars are placed in a safe and convenient position to be unloaded, and that must be in the usual and customary place for unloading. *Independence Mills Co.* v. *Burlington, etc. Ry. Co.,* 2 Am. St. Rep. 258; *Gregg* v. *I. C. R. R. Co.,* 37 Am. St. Rep. 238, and note; and, even then, in the absence of contract, its responsibility as carrier continues, according to. the weight of authority, until the consignees are notified, and have had a reasonable opportunity to unload the cars. *Missouri Pacific Ry. Co.* v. *Wichita Grocery Co.,* 55 Kan. 525; *Schen* v. *Benedict,* 116 N. Y. 510; *Bachant* v. *Boston & Maine R. R.,* 105 Am. St. Rep. 408; extended note to *Denver, etc., R. R. Co.* v. *Peterson,* 97 Am. St. Rep. 88, *et seq.*

The last cited authority discusses the subject in all its aspects, and collates the decisions *pro* and *con.*

While, perhaps, it is true that an agent, authorized to receive goods of his principal, from a carrier, may receive the goods at any suitable place that he may direct, and thereby bind his principal; still, to have that effect the agent must clearly understand that the goods are then and there tendered for delivery, and are subject to his control. If, however, the principal directs the delivery of his goods at a particular place, such as a compress, the agent has no authority to bind the principal by directions to deliver them elsewhere, or by any general agreement as to what shall constitute a delivery, as between him and the carrier. That principal, we think, is settled by the following cases: *Southern Ex. Co.* v. *Dickson,* 94 U. S. 549; *Bank of British North America* v. *Cooper,* 137 U. S. 473.

SMITH, J., delivered the opinion of the court.

Since it was not shown that this cotton was burned because of any negligence on the part of appellant, it is not liable to account to appellees for the value thereof, if at the time of the fire its liability was that of a warehouseman, and not that of a common carrier.

When appellant agreed with the consignees thereof to deliver this cotton to the compress company, the duty at once devolved upon it, there being no contract or agreement between it and these consignees to the contrary, of making delivery to this company in the usual and ordinary way; that is, by placing it in an accessible position and giving notice thereof to the company. Until this was done, and a reasonable time for the company to unload the car had elapsed, appellant's liability as a common carrier continued.

Appellant does not claim that the cotton was delivered in the usual and ordinary way; its defense being that it had either complied with its special contract with the receiver of the compress company with reference to making deliveries, or, if not, that its failure to do so was caused by the negligence of the servants of the compress company, and that in either event it had discharged its duty as a common carrier, and held the cotton simply as a warehouseman. This compress company was a mere agent of the consignees to receive the cotton. It was given no express, and certainly it had no implied, power to release appellant from this common law liability as an insurer; and, in the absence of any knowledge on the part of these consignees of this contract between appellant and the receiver of the compress company, appellees are not bound by the terms thereof.

It follows from the above that at the time of the fire appellant's liability was that of a common carrier, and, consequently, the decree of the court below is affirmed.

*Affirmed.*